JM:DAS/JEG
F.# 2010R0480

**M-10-328**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA

    -against-

GILBERT NOBLE and
DAVID SAYEGH,

               Defendants.

- - - - - - - - - - - - - - - - -X

**TO BE FILED UNDER SEAL**

COMPLAINT & AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(T. 18, U.S.C., § 1349)

EASTERN DISTRICT OF NEW YORK, SS:

       THOMAS D'AMICO, being duly sworn, deposes and states that he is a Special Agent of the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

       In or about and between March 3, 2010 and March 25, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GILBERT NOBLE and DAVID SAYEGH, did knowingly and intentionally conspire to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses and representations, did knowingly and intentionally transmit and cause to be transmitted writings, signs, signals, pictures and sounds by means of wire communication in interstate and foreign commerce for the purpose of executing said scheme and artifice. (Title 18, United States Code, Section 1349)

       The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with the FBI for more than two years. Prior to that, I was a Special Agent with the United States Secret Service for approximately five years. I have participated in numerous investigations of wire fraud, and, among other things, have conducted or participated in surveillance, execution of search warrants, debriefings of informants and reviews of taped conversations and business records.

2. My knowledge of the information set forth in this affidavit is based upon my personal participation in this investigation, my review of records, audio and video recordings and reports, my interviews with witnesses and victims, my conversations with other law enforcement agents involved in this investigation and my conversations with and review of information provided by financial institutions, among other things.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of arrest warrants, it does not include all of the facts I have learned during the course of this investigation. Where actions, conversations and statements of others are reported in this affidavit, they are reported in substance and in part unless otherwise indicated. All statements in this affidavit are set forth in substance and in part.

4. A cooperating witness ("the CW") has been cooperating with the FBI in connection with ongoing

investigations into fraud. The CW is an attorney licensed to practice in the state of New York, and has previously represented parties in real estate transactions. The CW has informed me that he previously was involved in a real estate transaction with defendant DAVID SAYEGH.

5. On or about March 3, 2010, defendant DAVID SAYEGH asked the CW to participate in a scheme whereby SAYEGH and his co-conspirators would wire funds from a brokerage account ("the Victim Account") to the CW's bank account. The CW would then transfer these funds to SAYEGH and his co-conspirators. In exchange for the CW's assistance, the CW would be permitted to keep a portion of the funds.

6. On or about March 5, 2010, the CW had a series of telephone conversations with SAYEGH, all of which were recorded. During these conversations, SAYEGH informed the CW that defendant GILBERT NOBLE was one of SAYEGH's co-conspirators in the scheme. When the CW asked for more information about the circumstances of the transaction, SAYEGH responded that "they think that the less you know, the better." SAYEGH urged the CW to participate in the scheme, saying "[t]his is so important, there is so much money to be made here."

7. On or about March 8, 2010, the CW met with NOBLE in the CW's office in Brooklyn, New York ("the March 8 Meeting"). This meeting was recorded using a hidden video camera. During the March 8 Meeting, NOBLE told the CW that, as a cover for the

scheme, the CW would purport to act as an attorney for defendant DAVID SAYEGH in a real estate transaction between SAYEGH and the owner of the Victim Account ("the Victim"). NOBLE further stated that the funds would be deposited in the CW's attorney escrow account, purportedly as payment to SAYEGH from the Victim in connection with the real estate transaction.

8. During the March 8 Meeting, defendant GILBERT NOBLE further stated that the funds were coming from a "dormant account [at] a brokerage house" and "any other details after that, it's better that you don't know, actually." When the CW asked about meeting with NOBLE's "inside guy" at the brokerage house, NOBLE said "there are certain things, as a lawyer, that you don't want to do, there are certain things you don't want to know."

9. On March 15, 2010, the CW met with defendant GILBERT NOBLE in the CW's office in Brooklyn, New York. This meeting was recorded using a hidden video camera. During this meeting, NOBLE told the CW that NOBLE's co-conspirators are "very high level people positioned in a brokerage house...there's gonna be a huge payoff and all of us are going to make a lot of money." NOBLE further made clear that the transaction was illegal, noting that "everybody's neck is on the line for this to happen because it won't be a situation where it's a legal proceeding if something goes wrong. You know, once the money goes in, then we're responsible to make sure that it gets disbursed properly.

If not, it's not gonna to be a legal situation. You understand what I'm saying when I say that?"

10. On March 24, 2010, defendant GILBERT NOBLE and defendant DAVID SAYEGH informed the CW that $94,753 would be wired from the Victim Account to the CW's bank account. NOBLE and SAYEGH directed the CW to then transfer $18,950 to SAYEGH's bank account, and $75,802 to an account controlled by other co-conspirators.

11. On March 25, 2010, $94,753 was transferred from the Victim Account to the CW's bank account ("the Transfer of Funds"). The Victim Account is located in Dallas, Texas. The CW's bank account is located in New York, New York.

12. Law enforcement authorities contacted the Victim, who informed authorities that he did not know SAYEGH or NOBLE, was not engaging in any real estate transaction with SAYEGH, and had not authorized the Transfer of Funds.

WHEREFORE, it is respectfully requested that a warrant be issued be issued for defendants GILBERT NOBLE and DAVID SAYEGH, so that they may be dealt with according to law.

THOMAS D'AMICO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
25th day of March 2010

s/ Reyes

UNIT
EAST

JUDGE
YORK